# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. _____

JEFFREY THOMAS,
SCOTT GOULD,
MICHAEL HAFFLING,
JOHN STEMMLER,
and TREVOR JENKINS,
as the Frontier Pilots Merger Committee,

**Plaintiffs**,

v.

REPUBLIC AIRWAYS HOLDINGS, INC., on behalf
of itself and its operating subsidiaries Chautauqua Airlines,
Inc., Republic Airlines, Inc., Shuttle America, Inc.,
Midwest Airlines, Inc., Frontier Airlines, Inc., and Lynx
Aviation, Inc.,

DANIEL SNEDDON, as Chairman of the Republic Airways Holdings Pilots
Merger Committee,

ANTHONY FREITAS, as Chairman of the Midwest Pilots
Merger Committee, and

MARK MANAUSA, as Chairman of the Lynx Pilots
Merger Committee,

**Defendants.**

---

## COMPLAINT TO VACATE ARBITRATION AWARD

---

Plaintiffs Jeffrey Thomas, Scott Gould, Michael Haffling, John Stemmler, and Trevor

Jenkins, as the duly-designated Frontier Pilots Merger Committee, by their undersigned counsel,

hereby complain as follows:

## NATURE OF THE ACTION

1.       This is an action under the "McCaskill Bond" Act, 49 U.S.C. § 42112, note, § 117(a), and the Railway Labor Act, 45 U.S.C. §§ 151 *et seq*., to vacate an arbitration award devising a seniority list integration involving the pilot employees of (1) Chautauqua Airlines, Inc. ("Chautauqua"), Republic Airlines, Inc. ("Republic"), and Shuttle America, Inc. ("Shuttle America"); (2) Frontier Airlines, Inc. ("Frontier"); (3) Midwest Airlines, Inc. ("Midwest"); and (4) Lynx Aviation, Inc. ("Lynx").  Plaintiffs are the members of the duly-designated Merger Committee representing the pilot employees of Frontier (the "Frontier Pilots") for seniority integration purposes. Defendants are the other parties to the affected arbitration agreement, and/or representatives thereof.

## JURISDICTION AND VENUE

2.       This Complaint is brought under, and this Court has jurisdiction pursuant to, the McCaskill Bond Act, 49 U.S.C. § 42112, note, § 117(a); the Railway Labor Act, 45 U.S.C. §§ 151 *et seq*.; and 28 U.S.C. §§ 1331 and 1337(a).  This Court further has authority to enter declaratory and other relief pursuant to 28 U.S.C. §§ 2201 and 2202, and Rule 57 of the Federal Rules of Civil Procedure.

3.       This action may properly be brought in the District of Colorado, and venue is proper in said District, pursuant to the provisions of 28 U.S.C. § 1391(a), inasmuch as, *inter alia*, one or more defendants reside in said District, and a substantial part of the events or omissions giving rise to plaintiffs' claims occurred therein.

## PARTIES

4.      Plaintiffs are pilot employees of Frontier and have, as more fully set forth below, been designated by the Frontier Airline Pilots Association ("FAPA") as the members of the Merger Committee representing the Frontier Pilots for purposes of seniority integration.

    a.      Plaintiff Jeff Thomas is a citizen of the State of Colorado and presently resides at 2878 Shoshone Trail, Lafayette, Colorado.

    b.      Plaintiff Scott Gould is a citizen of the State of Colorado and presently resides at 6006 South Lewiston Court, Centennial, Colorado.

    c.      Plaintiff Michael Haffling is a citizen of the State of Illinois and presently resides at 1070 West 15th Street #415, Chicago, Illinois.

    d.      Plaintiff John Stemmler is a citizen of the State of Colorado and presently resides at 1744 Clermont Street, Denver, Colorado.

    e.      Plaintiff Trevor Jenkins is a citizen of the State of Colorado and presently resides at 4823 Craftsman Drive, Parker, Colorado.

5.      Defendants are, as more fully set forth below, the other parties to the arbitration agreement giving rise to the arbitration award at issue, and/or representatives thereof.

    a.      Defendant Republic Airways Holdings, Inc. ("RAH") is a holding company with its principal offices located at 8909 Purdue Road, Indianapolis, Indiana, and is a corporation organized under the laws of Delaware.

        (1)      At all times relevant herein, RAH has been the parent, *inter alia*, of Chautauqua, Republic, and Shuttle America.  Through those three subsidiaries, RAH has at all times

relevant herein provided scheduled air carrier service, on a "code share" or "fee for departure" basis, under the brands of other air carriers (including Delta Airlines, United Airlines, Continental Airlines, USAirways, and American Airlines), pursuant to contracts with such other carriers. At all times relevant herein, RAH and/or each such subsidiary has been a common carrier by air engaged in interstate or foreign commerce within the meaning of Section 201 of the Railway Labor Act, 45 U.S.C. § 181; and has been an air carrier and a covered air carrier within the meaning of the McCaskill Bond Act, 49 U.S.C. § 42112, note, § 117(a).

(2)     As more fully set forth below, through the acquisitions leading to the events giving rise to this action, RAH has also become the parent of Frontier, Midwest, and Lynx. At all times relevant herein, each of those entities has been a common carrier by air engaged in interstate or foreign commerce within the meaning of Section 201 of the Railway Labor Act, 45 U.S.C. § 181; and has been an air carrier and a covered air carrier within the meaning of the McCaskill Bond Act, 49 U.S.C. § 42112, note, § 117(a).

(3)     RAH is named as a defendant in its own right and on behalf of its various operating subsidiaries. RAH and/or each of its operating subsidiaries is licensed to do business and/or does business in the State of Colorado.

b.     Defendant Daniel Sneddon is a citizen of the State of Ohio and presently resides at 51601 State Route 14, East Palestine, Ohio. Sneddon has at all relevant times been a pilot employee of Chautauqua, Republic and/or Shuttle America. Sneddon has been designated by the International Brotherhood of Teamsters (the "IBT") as the Chairman of the Merger Committee representing the pilot employees of Chautauqua, Republic and Shuttle America (collectively the

4

"RAH Pilots") for seniority integration purposes, and is named as a defendant herein in that capacity.

c.      Defendant Anthony Freitas is a citizen of the State of Massachusetts and presently resides at 34 Northwinds Lane, West Barnstable, Massachusetts.  Freitas  has at all relevant times been a pilot employee of Midwest.  Freitas has been designated by the Air Line Pilots Association, International ("ALPA") as the Chairman of the Merger Committee representing the pilot employees of Midwest (collectively the "Midwest Pilots") for seniority integration purposes, and is named as a defendant herein in that capacity.

d.      Defendant Mark Manausa is a citizen of the State of Colorado and presently resides at 3531 South Corona Street, Englewood, Colorado.  Manausa has at all relevant times been a pilot employee of Lynx.  Manausa has been designated by the United Transportation Union (the "UTU") as the Chairman of the Merger Committee representing the pilot employees of Lynx (collectively the "Lynx Pilots") for seniority integration purposes, and is named as a defendant herein in that capacity.

## FACTUAL ALLEGATIONS

6.      Seniority is among the most important principles underlying collective bargaining between pilots and their carrier employers.  Seniority is of particular significance to pilots, for seniority determines not only a pilot's wages and compensatory benefits, but also virtually every other significant term and condition of employment, including, *inter alia*, the equipment and routes he flies, his position in the cockpit, his domicile, his vacations, and the hours he works.  Pilot seniority is "system" seniority, i.e., it is based on a single, system-wide seniority list limited to and

effective only within a particular airline, and generally is not transferrable from one carrier to another.

7.    a.    At all times relevant herein, FAPA has been the duly-recognized bargaining representative of the Frontier Pilots under the Railway Labor Act.  Frontier and FAPA are parties to a collective bargaining agreement governing the terms and conditions of employment of the Frontier Pilots (the "Frontier CBA"), which will become amendable within the meaning of the Railway Labor Act as of March 2, 2015.  Exhibit 1 attached hereto is a true and correct copy of Sections 1, 3 and 24 of the Frontier CBA.  Exhibit 2 attached hereto is a true and correct copy of Letter of Agreement 39 of the Frontier CBA ("Letter of Agreement 39").

b.    At all times relevant herein, the IBT has been the duly-recognized bargaining representative of the RAH Pilots under the Railway Labor Act.  Chautauqua and the IBT are parties to a collective bargaining agreement governing the terms and conditions of employment of the RAH Pilots (the "Chautauqua CBA"), which became amendable within the meaning of the Railway Labor Act as of October 17, 2007.

c.    At all times relevant herein, ALPA has been the duly-recognized bargaining representative of the Midwest Pilots under the Railway Labor Act.  Midwest and ALPA are parties to a collective bargaining agreement governing the terms and conditions of employment of the Midwest Pilots (the "Midwest CBA"), which became amendable within the meaning of the Railway Labor Act in or about September, 2008.

d.    Since on or about September 3, 2009, the UTU has been the duly-recognized bargaining representative of the Lynx Pilots under the Railway Labor Act.

8.    In or about 2006, Frontier became a wholly-owned subsidiary of Frontier Airline Holdings, Inc. ("Frontier Holdings"), a holding company organized under the laws of the State of Delaware.

9.    Lynx was formed in 2006 as a wholly-owned subsidiary of Frontier Holdings, for the purpose of providing scheduled air carrier service. Lynx commenced scheduled service under the Frontier brand in December, 2007.

10.    Effective on or about July 31, 2009, RAH acquired Midwest Air Group, Inc., the parent corporation of Midwest, pursuant to an Agreement and Plan of Merger.

11.    Effective on or about October 1, 2009, RAH acquired Frontier Holdings, Frontier, and Lynx pursuant to a Second Amended and Restated Investment Agreement approved by the United States Bankruptcy Court in In re Frontier Airlines Holdings, Inc., et al., 08-11298 (S.D.N.Y.). Section 9.01(a) of that Agreement provided as follows:

> Subject to the provisions of the Railway Labor Act, upon the Closing, the Investor will (i) be bound by the current Collective Bargaining Agreement between Frontier Airlines and the Frontier Airlines Pilots Association as amended and in effect as of the Closing (the **"FAPA CBA"**), (ii) recognize Frontier Airlines Pilots Association as the representative of the Frontier Airlines pilots and (iii) assume employment of such pilots represented by the Frontier Airlines Pilots Association. Upon and after the Closing, the Company shall continue to be responsible for implementing and carrying out its obligations under the FAPA CBA.

12.    FAPA and Frontier (on behalf of RAH) entered into Letter of Agreement 39 in connection with RAH's acquisition of Frontier Holdings, effective September 30, 2009. Among other things, Section B.3 of Letter of Agreement 39 provides as follows:

> The seniority lists of Frontier Airlines Pilots, Republic pilots (pilots employed by Republic Airlines, Shuttle America and Chautauqua Airlines), and any other pilot group employed by an Entity which acquires, is acquired by or merged with RAH

> will be integrated into a Master Seniority List (MSL) in accordance with Sections 3
> and 13 of the Allegheny-Mohawk LPPs and submitted to RAH for acceptance ...

Exhibit 3 attached hereto is a true and correct copy of the "the Allegheny-Mohawk LPPs" referred to in Letter of Agreement 39, which were the labor protective provisions imposed by the Civil Aeronautics Board in the Allegheny-Mohawk merger (the "Allegheny/Mohawk LPPs"). Section 3 of the Allegheny/Mohawk LPPs requires, *inter alia*, that any integration of seniority lists be "fair and equitable." The Chautauqua CBA and the Midwest CBA also included provisions referencing the Allegheny/Mohawk LLPs.

13. Frontier (on behalf of RAH) and FAPA also agreed in Letter of Agreement 39 that any such Master Seniority List could not be self-executing, and could be implemented only upon the conclusion of future collectively-bargained terms. Section B.4 of Letter of Agreement 39 provides:

> Such MSL list shall be applied for transfer of pilots between the Company and any RAH entity only as may be hereafter agreed to by RAH, FAPA (or any properly-designated successor to FAPA) and the properly-designated representative of Republic pilots or any other pilot group of an RAH entity. The carriers will be operated separately under their respective CBAs without integration of the Pilot seniority lists until such integration and implementation is agreed to and concluded in accordance with Sections 3 and 13 of the Allegheny-Mohawk LPPs.

Letter of Agreement 39 does not otherwise modify or limit the duration of the Frontier CBA under Section 24 thereof, and places no other restriction or limitation on the parties' rights and obligations to negotiate regarding the implementation of the Master Seniority List in accordance with the Railway Labor Act.

14. On or about August 10, 2009, upon the conclusion of Letter of Agreement 39, subject to ratification by the FAPA membership, RAH issued a letter to FAPA, a true and correct copy of

which is Exhibit 4 attached hereto.  Letter of Agreement 39 was thereafter ratified by the FAPA membership.

15.     In entering into Letter of Agreement 39, FAPA and the Frontier Pilots reasonably relied to their detriment on representations made by Frontier and RAH to FAPA and the Frontier Pilots including, without limitation, the representation that RAH intended to maintain Frontier as a separate operation; and the representations that RAH would be party to any arbitration under the Allegheny/Mohawk LPPs, and that the Arbitrator in such arbitration would be bound by the negotiated conditions of Letter of Agreement 39 including, *inter alia*, Section B.4 thereof.

16.     a.     Pursuant to the Railway Labor Act, until the National Mediation Board (the "NMB") ruled otherwise, RAH, Frontier, Midwest and Lynx were to remain separate transportation systems and employers within the meaning of the Act following the transactions described above. Under the NMB's rules, each of the separate NMB certifications of bargaining representatives remained in full force and effect until such time that (1) a labor organization applied to the NMB for a ruling that one or more of the carriers constituted a single transportation system in the pilot craft and class for purposes of the Railway Labor Act; (2) the NMB found upon investigation that such a single transportation system existed; and (3) the NMB designated a single bargaining representative for the combined pilot craft and class in that single transportation system. See NMB Representation Manual §19.

b.     Moreover, pursuant to the Railway Labor Act, even following the designation of a single bargaining representative in such single transportation system, each pre-acquisition collective bargaining agreement will remain in full force and effect in accordance with its terms,

with respect to pilots in the pre-acquisition pilot group covered by such agreement, and the single bargaining representative designated by the NMB will assume each pre-merger collective bargaining agreement according to its terms.  In particular, the Frontier CBA will continue in full force and effect including, without limitation, Letter of Agreement 39 and the duration provisions of Section 24 of the Frontier CBA.

17.     On or about November 3, 2009, a Section 13(b) Dispute Resolution Agreement (the "Section 13(b) Agreement"), a copy of which is Exhibit 5 attached hereto, was entered into by and among RAH (on behalf of itself and its operating subsidiaries Chautauqua, Republic, Shuttle America, Midwest, Frontier, and Lynx) and the Merger Committees representing the RAH Pilots, the Frontier Pilots, the Midwest Pilots, and the Lynx Pilots as designated by the IBT, FAPA, ALPA, and UTU, respectively.  The Section 13(b) Agreement governed the process for devising a seniority integration through a process of negotiation, mediation and, if necessary, arbitration.

18.     In the event of arbitration, the Section 13(b) Agreement conferred on the Arbitrator the authority, *inter alia*, to devise a "fair and equitable" seniority integration, within the meaning of Section 3 of the Allegheny/Mohawk LPPs; and to include "the date on which the seniority integration will become effective, which date shall not be before the NMB issues its ruling on whether the RAH affiliates comprise a single transportation system and certifies the Organization, if any, that is the duly designated representative of the pilot craft or class on that transportation system."  However, the Section 13(b) Agreement did not confer on the Arbitrator the authority to devise a seniority integration that is not "fair and equitable" within the meaning of the the Allegheny/Mohawk LPPs; or to modify or limit any party's existing rights or obligations, *inter alia*,

under the Railway Act or any existing collective bargaining agreement, including the Frontier CBA. In entering into the Section 13(b) Agreement, neither FAPA nor the Frontier Merger Committee consented to any modification of or limitation on the provisions of the Frontier CBA, including Letter of Agreement 39 or the amendable date of the Frontier CBA, or waived any of the provisions thereof.

19.     The parties were unable to devise a seniority integration through negotiation or mediation pursuant to the Section 13(b) Agreement.  That matter was thereupon submitted to arbitration before Arbitrator Dana E. Eischen pursuant to the Section 13(b) Agreement.

20.     Arbitrator Eischen conducted 13 days of evidentiary hearings, commencing on March 15, 2010 and concluding on August 1, 2010.  Arbitrator Eischen thereupon formed a Technical Assistance Team (the "TAT"), comprised of one representative of each party, to perform specific data analyses at Arbitrator Eischen's request.  Arbitrator Eischen issued a draft Opinion and Award on November 5, 2010, in response to which the parties submitted comments and reply comments. On February 19, 2010, Arbitrator Eischen issued his final Opinion and Award (the "Eischen Award") a true and correct copy of which is Exhibit 6 attached hereto.

21.     In the Eischen Award, Arbitrator Eischen defined the "fair and equitable" standard under the Allegheny/Mohawk LPPs, *inter alia*, as follows:  "Arbitrators have uniformly determined that the *Allegheny-Mohawk* 'fair and equitable' standard is satisfied if the integration preserves the job expectations and relative bidding positions that employees held prior to the merger ... At bottom, the objective is to preserve, to the extent possible ... the pilots' career expectations at the time they learned of the transaction and to share equitably the growth opportunities created by the transaction,

based on the groups' contributions to that growth." The Eischen Award accordingly identified the

principal objectives to be achieved by the Master Seniority List:

> The Award balances divergent pre-acquisition career expectations, gives reasonable credit to each group of pilots for their contribution to the combined operation, accounts for the diminished expectations of Lynx and Midwest pilots, and preserves reasonable career expectations of all pilots in an appropriate fashion.
>
> ...
>
> Under the arbitrated Award there will be one pilot group on a list which accords pilots, as much as possible, minimal diminution in reasonably held career expectations and a fair chance to share in potential future growth. Proposals designed to give a single group windfalls in job security that none enjoyed pre-acquisition or to claim the lion's share of potential growth are avoided in the hybrid methodology utilized to construct the IMSL.

22.     The Eischen Award reflected the following major conclusions by Arbitrator Eischen

with respect to the equities to be taken into account in devising a fair and equitable seniority

integration among these parties:

*       The narrow-body Captain and First Officer jobs brought to the transactions by the Frontier Pilots are generally superior to the regional jet jobs brought to the transactions by the RAH Pilots.

*       The E-190 is an aircraft which RAH likely could not have placed in service absent the transactions.

*       The Frontier Pilots came to the transactions at a more advanced stage of the established pilot career path than the RAH Pilots, so that "virtually every" Frontier Pilot was more advanced in his career than "virtually every" RAH Pilot.

*       The acquisition of Frontier has given every RAH Pilot a new opportunity that he did not have before to take a "road less traveled" to the "holy grail" of a mainline Captain job.

*       Notwithstanding RAH's historical success in its fee-for-departure business, the future of that business was challenged, and remains challenged. The acquisition of

12

the Frontier branded business has provided needed diversity and represents the future of RAH's enterprises.

\*    Weighed against the foregoing, RAH's financial resources helped sustain Frontier through its exit from bankruptcy, and helped finance the initial growth prospects of the Frontier branded business.

23.    In the Eischen Award, Arbitrator Eischen recognized that "proposed conditions/restrictions seeking to modify existing contract provisions" were "beyond the scope of my jurisdiction and authority in this proceeding;" that "[m]y arbitral authority under the [Section 13(b) Agreement] does not extend to elimination or modification of existing contract language ...;" and that, "[i]n the event that the NMB finds a single transportation system and then certifies a single bargaining representative for the system-wide craft or class of pilots, applicable CBAs will remain applicable, in accordance with their terms, until consolidated or otherwise modified by valid mutual agreement between the affected single carrier and a certified single pilot craft or class representative, if any."

24.    In the Eischen Award, Arbitrator Eischen devised a seniority integration creating an "Integrated Master Seniority List" (the "IMSL") constructed as follows:

1.    All pilots holding seniority on a list but unavailable to hold a line position on the date of the respective acquisitions (July 31, 2009 for Midwest pilots/October 1, 2009 for the other groups), due to employment as management, military leave of absence or long-term medical leave (on leave or disability on acquisition date and still on such medical leave as of September 1, 2010), were removed from the respective purged and updated pre-merger lists.

2.    The first 962 positions on the IMSL were filled with the first 650 Republic pilots and the first 312 Frontier pilots, in a ratio of 650:312, beginning with a Republic pilot.

3.      The next 1,155 positions on the IMSL were filled with the next 700 Republic pilots, the remaining 334 Frontier pilots and 121 Midwest pilots, in a ratio of 700:334:121, beginning with a Republic pilot.

4.      The next 660 positions on the IMSL were filled with the remaining 559 Republic pilots and 101 Lynx pilots, in a ratio of 559:101, beginning with a Republic pilot.

5.      The last 204 positions on the IMSL were filled with the remaining Midwest pilots furloughed prior to June 23, 2009, until all of the respective purged and updated pre-merger lists were exhausted.

6.      Pilots pulled in Paragraph 1 were inserted into the integrated list immediately above the pilot who appeared immediately below that pulled pilot on the preintegration list.

7.      The relative position of each pilot on the pre-merger lists remained unchanged on the IMSL.  Pilots hired after October 1, 2009 are to be placed at the end of the IMSL, by date of hire.

The Eischen Award subjected the IMSL to certain "Conditions and Restrictions," including a provision giving Frontier Pilots priority for all Captain and First Officer positions on Airbus or replacement aircraft for seven years following the implementation of the Award.

25.     Before Arbitrator Eischen issued the final Eischen Award, FAPA requested that Arbitrator Eischen analyze of the projected future impact of the IMSL and Conditions and Restrictions on the positions to be held by pilots in the future, taking into account projected age 65 attrition and the record evidence with respect to RAH's projected future fleet.  Arbitrator Eischen did not request any such analysis from the TAT, and otherwise refused to consider such evidence.

26.     Notwithstanding, and contrary to, Arbitrator Eischen's definition of the "fair and equitable" standard and his findings with respect to the equities to be considered, as summarized

14

above, the seniority integration devised in the Eischen Award is characterized, *inter alia*, by the following:

        a.    Tiers I and II of the IMSL, which have no articulated basis in Arbitrator Eischen's allocation of aircraft and jobs to the respective pre-acquisition pilot groups, integrate Frontier and RAH Pilots who, based on Arbitrator Eischen's own findings, are at different places on the traditional pilot career path; hold jobs which are not comparable; and do not have comparable pre-transaction expectations.

        b.    Based on known age 65 attrition and the record evidence regarding anticipated future fleet development, as the IMSL is implemented and applied in the future, Tiers I and II will fail to credit the Frontier Pilots for their contribution to the combined operation or preserve their reasonable pre-transaction career expectations; to the contrary, it will result in the significant diminution of the Frontier Pilots' reasonably held career expectations. Nor will the integrated seniority list give the Frontier Pilots an equitable share of potential future growth. The end result will be a substantial windfall to the RAH Pilots at the Frontier Pilots' direct expense.

        c.    The seven-year Airbus "fence" is not adequate to mitigate these inequities, under Arbitrator Eischen's own stated objectives under the fair and equitable standard. In the best case, at the expiration of the fence the Frontier Pilots will stagnate for the duration of their careers, while Airbus advancement opportunities which the Frontier Pilots brought to the transaction, as well as narrow-body and E-190 growth opportunities, will disproportionately be transferred to the RAH Pilots. In the worst case, Frontier Pilots will even lose jobs they occupied at the time of the

transaction; many Frontier Pilots will be relegated to regional jet jobs, and narrow-body and E-190 vacancies will go disproportionately to RAH Pilots.

27.     Notwithstanding the rights and obligations of the various parties under the Railway Labor Act and existing collective bargaining agreements including, *inter alia*, Letter of Agreement 39, and Arbitrator Eischen's recognition that he lacked the authority to change those rights and obligations, the Eischen Award provides as follows with respect to the implementation of the IMSL:

> The IMSL (Appendix A) shall become effective for purposes of the second sentence of DRA §V (g) and applicable for purposes of the first sentence of DRA §V (j) on the sixtieth (60th) day following the date of the National Mediation Board rulings and certification referenced in DRA §V (g), unless an earlier date is agreed upon by the designated pilot representative and the single carrier.

> The awarded seniority integration shall be implemented on the specified effective/applicable date, with appropriate adjustments to the IMSL (Appendix A), if the NMB rules that fewer than all of the carriers are included in a single transportation system for the pilot craft or class.

The Eischen Award thus purports to require that RAH and the single bargaining representative designated by the NMB reach agreement on the terms on which the IMSL will be implemented, and implement the IMSL, no later than 60 days following the NMB's certification of a single bargaining representative.  The Award thereby modifies and limits the rights and obligations of the respective parties under, *inter alia*, the Railway Labor Act and Letter of Agreement 39.

28.     On or about October 10, 2010, the IBT applied to the NMB for a finding that Chautauqua, Republic, Shuttle America, Frontier and Lynx (but not Midwest) comprised a single transportation system for purposes of the pilot craft and class under the Railway Labor Act.  On April 7, 2011, the NMB found that a single transportation system exists for the pilot craft and class including the RAH, Frontier, Midwest and Lynx Pilots.  <u>Republic Airlines, *et al*.</u>, 38 NMB 138.  The

16

NMB's designation of a single bargaining representative for that combined craft and class is pending.

**COUNT I –**
**FIRST CLAIM FOR RELIEF – McCASKILL BOND ACT**

29.     The McCaskill Bond Act states, *inter alia*, that "[w]ith respect to any covered transaction involving two or more covered air carriers that results in the combination of crafts or classes that are subject to the Railway Labor Act, Sections 3 and 13 of the labor protective provisions imposed by the Civil Aeronautics Board in the Allegheny-Mohawk merger shall apply to the integration of covered employees of the covered air carriers."  49 U.S.C. § 42112, note, § 117(a).  As set forth above, Section 3 the Allegheny/Mohawk LPPs requires, *inter alia*, that such integration of seniority lists be "fair and equitable."

30.     As matter of law, insofar as the proceeding under the Section 13(b) Agreement leading to the Eischen Award arose from a "covered transaction" within the meaning of the McCaskill Bond Act, the Eischen Award is null and void and subject to vacation under the McCaskill Bond Act because, *inter alia*, the Eischen Award is not fair and equitable within the meaning of Section 3 of the Allegheny/Mohawk LPPs, as Arbitrator Eischen defined that standard, based on Arbitrator Eischen's findings with respect to the equities to be considered; and the Eischen Award otherwise exceeded Arbitrator Eischen's authority under the Section 13(b) Agreement and the Allegheny/Mohawk LLPs.

17

## COUNT II –
## SECOND CLAIM FOR RELIEF - RAILWAY LABOR ACT

1 - 28.  Plaintiffs hereby repeat and reallege paragraphs 1 through 28 of Count I as paragraphs 1 through 28 of this Count II.

29.   Pursuant to Title II of the Railway Labor Act, 45 U.S.C. §§ 181 *et seq*., every common carrier by air engaged in interstate or foreign commerce is made subject to the provisions of the Act including, *inter alia*, with respect to the resolution of major and minor disputes thereunder.

30.   As a matter of law, insofar as the arbitration under the Section 13(b) Agreement leading to the Eischen Award arose from a collectively-bargained contractual arrangement subject to the Railway Labor Act, the Eischen Award is null and void and subject to vacation under the Railway Labor Act on the ground, *inter alia*, that the Award exceeded Arbitrator Eischen's authority because, without limitation:

a.    The Eischen Award is not fair and equitable within the meaning of Section 3 of the Allegheny/Mohawk LPPs, as Arbitrator Eischen defined that standard, based on Arbitrator Eischen's findings with respect to the equities to be considered.

b.    Arbitrator Eischen refused to hear pertinent evidence including, without limitation, evidence regarding the projected future impact of the IMSL on jobs held, taking into account the record evidence regarding anticipated attrition and fleet developments.

c.    The requirement that RAH and the single bargaining representative negotiate the terms of the implementation of the Eischen Award within 60 days following the NMB's designation of that bargaining representative, improperly modifies and limits the parties' rights and

obligations to bargain under the Railway Labor Act and the provisions of existing collective bargaining agreements including, *inter alia*,  Letter of Agreement 39.

### REQUEST FOR RELIEF

WHEREFORE, PLAINTIFFS PRAY:

A.     That this Court enter its Order, pursuant to the McCaskill Bond Act, 49 U.S.C. § 42112, note, 117(a); the Railway Labor Act, 45 U.S.C. §§ 151 et seq.; and 28 U.S.C. §§ 2201 and 2202, and F.R.Civ.P. 57, vacating the Eischen Award, and finding and declaring that the Eischen Award is invalid, null and void, and without force or effect, and enter judgment in favor of plaintiffs to that effect; and

B.     That this Court grant plaintiffs such other and further relief as the Court shall deem just in the premises.

Dated this 18th day of May, 2011.

   s/ Joseph M. Goldhammer
Joseph M. Goldhammer, #5761
Buescher, Goldhammer,
  Kelman, & Dodge, P.C.
1563 Gaylord Street;77
Denver, CO 80206
Telephone: (303) 333-7751
Facsimile: (303) 333-7758
jgoldhammer@laborlawdenver.com


_____
Wesley Kennedy
(Application Pending Under D.COLO.LCivR 57.5)


_____
Jason McGaughy
(Application Pending Under D.COLO.LCivR 57.5)
Allison, Slutsky & Kennedy, P.C.
230 West Monroe Street, Suite 2600
Chicago, Illinois 60606
Telephone: (312) 364-9400
Facsimile: (312) 364-9410
kennedy@ask-attorneys.com
mcgaughy@ask-attorneys.com

Counsel for Plaintiffs

Jeff Thomas
2878 Shoshone Trail
Lafayette, CO  80026

Scott Gould
6006 South Lewiston Court
Centennial, CO  80016

Michael Haffling
1070 West 15th Street , #415
Chicago, IL  60608

John Stemmler
1744 Clermont Street
Denver, CO  80220

Trevor Jenkins
4823 Craftsman Drive
Parker, CO  80134

20