## STANDARD ALLEGHENY-MOHAWK PROTECTIVE PROVISIONS

Section 1.    The fundamental scope and purpose of the conditions hereinafter specified are to provide for compensatory allowances to employees who may be affected by the proposed acquisition of control of [CARRIER], approved by the attached order, and it is the intent that such conditions are to be restricted to those changes in employment due to and resulting from such requisition.  Fluctuations, rises and falls, and changes in volume or character of employment brought about by other causes are not covered by or intended to be covered by these provision.

Section 2(a).    The term "merger" or "acquisition" as used herein means joint action by the two carriers whereby they unify, consolidate, merge, coordinate or pool in whole or in part their separate airline facilities or any of the operations or services previously performed by them through such separate facilities.

(b)    The term "carrier" as used herein refers to either [CARRIER] or to the corporation surviving after consummation of the proposed merger of the two companies.

(c)    The term "effective date of merger" as used herein shall mean the effective date of the amended certificates of public convenience and necessity transferred to the surviving corporation pursuant to the approval granted in the attached order.

(d)    The term "employee" as used herein shall mean an employee of the carriers other than a temporary or part-time employee.

Section 3.    Insofar as the acquisition or merger affects the seniority rights of the carriers' employees, provisions shall be made for the integration of seniority lists in a fair and equitable manner, including, where applicable, agreement through collective bargaining

Exhibit 3

between the carriers and the representatives of the employees affected. In the event of failure to agree, the dispute may be submitted by either party for adjustment in accordance with Section 13.

Section 4(a). Subject to the applicable conditions set forth herein, no employee of either of the carriers involved in the acquisition or merger who is continued in service shall as a result of the acquisition or merger be placed in a worse position with respect to compensation than he occupied immediately prior to his displacement so long as he is unable in the normal exercise of his seniority rights under existing agreements, rules and practices to obtain a position producing compensation equal to or exceeding the compensation of the position held by his immediately prior to such date, except, however, that if he fails to exercise his seniority rights to secure another available position, which does not require a change in residence, to which he is entitled under the working agreement and which carries a rate of pay and compensation exceeding those of the position which he elects to retain, he shall thereafter be treated for the purposes of this section as occupying the position which he elects to decline.

(b)     The protection afforded by the foregoing paragraph is hereby designated as a "displacement allowance" which shall be determined in each instance in the manner hereinafter described. Any employee entitled to such allowance is hereinafter referred to as a "displaced" employee.

(c)     Each displacement allowance shall be a monthly allowance determined by computing the total compensation received by the employee and his total time paid for during the last 12 months in which he performed service immediately preceding the date of

his displacement (such 12 months being hereinafter referred to s the "test period") and by dividing separately the total compensation and the total time paid for by 12, thereby producing the average monthly compensation and average monthly time paid for, which shall be the minimum amounts used to guarantee the displaced employee; and if his compensation in this current position is less in any month in which he performs work than the aforesaid average compensation, he shall be paid the difference, less compensation for any time lost on account of voluntary absences to the extent that he is not available for service equivalent to his average monthly time during this test period, but he shall be compensated in addition thereto at the rate of the position filled for any time worked in excess of the average monthly time paid for during the test period.

(d)   The protection afforded herein shall only apply to displacements occurring within a period of 3 years from the effective date of the acquisition or merger (referred to herein as the claim period); and the period during which this protection is to be given (referred to herein as the protective period) shall extend for a period of 4 years from the date on which the employee is displaced.

Section 5(a).   Any employee of either of the carriers participating in the acquisition or merger who is deprived of employment as a result of said acquisition or merger shall be accorded an allowance (hereinafter termed a "dismissal allowance"), based on length of service, which (except in the case of an employee with less than 1 year of service) shall be a monthly allowance equivalent in each instance to 60 percent of the average monthly compensation of the employee in question during the last 12 months of his employment in which he earned compensation prior to the date he is first deprived of employment as a

result of the acquisition or merger. This dismissal allowance will be made to each eligible employee, while unemployed, by the surviving carrier during a period beginning at the date he is first deprived of employment as a result of the acquisition or merger and extending in each instance for a length of time determined and limited by the following schedule:

| Length of service (Years) | Period of Payment Months |
|---|---|
| 1 and less than 2 | 6 |
| 2 and less than 3 | 12 |
| 3 and less than 5 | 18 |
| 5 and less than 10 | 36 |
| 10 and less than 15 | 48 |
| 15 and over | 60 |

In the case of an employee with less than 1 year of service such employee shall not be covered by the benefits provided in this section, but shall receive such benefits, and only such benefits, as are provided by section 7.

(b) For the purpose of these provisions, the length of service of the employee shall be determined from the date he last acquired an employment status with the employing carrier and he shall be given credit for 1 month's service for each month in which he performed any service (in any capacity whatsoever) and 12 such months shall be credited as 1 year's service. The employment status of an employee shall not be interrupted by furlough in instances where the employee has a right to and does return to service when called. In determining length of service of an employee acting as officer or other official representative of an employee organization, he will be given credit for performing service while so engaged

on leave of absence from the service of the carrier: Provided, that in calculating the dismissal allowance for such an employee, such allowance shall be based upon the compensation paid such employee by the carrier during his last 12 months of service on the company payroll and not on the compensation he may have been paid by the employee representative organization.

(c)     An employee shall not be regarded as deprived of employment in case of his resignation, death, or retirement on account of age of disability in accordance with the current rules and practice applicable to employees generally, dismissal for justifiable cause in accordance with the rules, or furlough because of reduction in forces due to seasonal requirements of the service; nor shall any employee be regarded as deprived of employment as the result of the acquisition or merger who is not deprived of his employment within 3 years from the effective date of said acquisition or merger.

(d)     Each employee receiving a dismissal allowance shall keep [CARRIER] informed of his address and the name and address of any other person by whom he may be regularly employed.

(e)     The dismissal allowance shall be paid to the regularly assigned incumbent of the position abolished. If the position of an employee is abolished while he is absent from service, he will be entitled to the dismissal allowance when he is available for service. The employee temporarily filling said position at the time it was abolished will be given a dismissal allowance on the basis of said position until the regular employee is available for service and thereafter shall revert to his previous status and will be given a dismissal allowance accordingly if any is due.

Page 6 of 12

(f)     An employee receiving a dismissal allowance shall be subject to call to return to service after being notified in accordance with the working agreement, and such employee may be required to return to the service of the employing carrier for other reasonably comparable employment for which he is physically and mentally qualified and which does not require a change in his place of residence, if his return does not infringe upon the employment rights of other employees under the working agreement.

(g)     If an employee who is receiving a dismissal allowance returns to service the dismissal allowance shall cease while he is so reemployed and the period of time during which he is so reemployed shall be deducted from the total period for which he is entitled to receive a dismissal allowance. During the time of such reemployment, however, he shall be entitled to protection in accordance with the provisions of section 4.

(h)     If an employee who is receiving a dismissal allowance obtains other employment, his dismissal allowance shall be reduced to the extent that the sum total of his earnings in such employment plus his allowance and any unemployment insurance benefit (or similar benefit) exceed the amount upon which his dismissal allowance is based: Provided, that this shall not apply to employees with less than 1 year's service.

(i)     A dismissal allowance shall cease prior to the expiration of its prescribed period in the event of –

1.     Failure without good cause to return to service after being notified of a position for which he is eligible and as provided in paragraphs (f) and (g).

2.     Resignation.

3.     Death.

    4.     Retirement on account of age or disability in accordance with the current rules and practices applicable to employees generally.

    5.     Dismissal for justifiable cause.

Section 6.    An employee affected by the acquisition or merger shall not during the applicable protective period be deprived of benefits attaching to his previous employment, such as hospitalization, relief, and the like.

Section 7.    Any employee eligible to receive a dismissal allowance under section 6 hereof may, at his option at the time of acquisition or merger, resign and (in lieu of all other benefits and protections provided in these provisions) accept in a lump sum a separation allowance determined in accordance with the following schedule:

| Length of service (Years) | Separation allowance (month's pay) |
|---|---|
| 1 and less than 2 | 3 |
| 2 and less than 3 | 6 |
| 3 and less than 5 | 9 |
| 5 and over | 12 |

In the case of employees with less than 1 year's service, 5 day's pay, at the straight time rate per working day of the position last occupied, for each full month in which they performed service will be paid as the lump sum.

    (a)    Length of service shall be computed as provided in section 5.

    (b)    One month's pay shall be computed by multiplying by 30 the calendar daily rate of pay received by the employee in the position last occupied prior to the time of the acquisition or merger.

Section 8(a). An employee who is retained in the service of the carrier surviving the acquisition or merger (or who is later restored to service from the group of employees entitled to receive a dismissal allowance) who is required to change the point of his employment as a result of such acquisition or merger is therefore required to move his place of residence shall be reimbursed for all expenses of moving his household and other personal effects and for the traveling expenses of himself and members of his family and his own actual wage loss during the time necessary for such transfer and for a reasonable time thereafter (not to exceed 2 working days) used in securing a place of residence in his new location. The exact extent of means of transportation shall be agreed upon in advance between the carrier and the affected employee or his representative. No claims for expenses under this section shall be allowed unless they are incurred within 3 years from the effective date of the acquisition or merger, and the claim must be submitted within 90 days after the expenses are incurred.

(b)     Changes in place of residence subsequent to the initial change caused by the acquisition in accordance with working agreements are not comprehended within the provisions of this section.

Section 9(a). The following provisions shall apply, to the extent they are applicable in each instance, to any employee who is retained in the service of the carriers involved in this acquisition or merger (or who is later restored to such service from the group of employees entitled to receive a dismissal allowance) who is required to change the point of his employment as a result of such acquisition or merger and is therefore required to move his place of residence.

1.    If the employee owns his own home in the locality from which he is required to move, he shall at his option be reimbursed by the carrier for any loss suffered in the sale of his home for less than its fair value. In each case the fair value of the home in question shall be determined as of a date sufficiently prior to the acquisition or merger to be unaffected thereby; <u>Provided, however,</u> that if the home is not sold within a substantial period of time after the acquisition or merger, then the fair value of the home shall be determined as of a date as closely related to the date of sale as possible, with an agreed-upon adjustment being made to exclude any effect of the acquisition or merger on such fair value. The carrier shall in each instance be afforded an opportunity to purchase the home at such fair value before it is sold by the employee to any other party.

2.    If the employee is under a contract to purchase his home, the carrier shall protect him against loss to the extent of the fair value of any equity he may have in the home and in addition shall relieve him from any further obligations under his contract.

3.    If the employee holds an unexpired lease of a dwelling occupied by him as his home, the carrier shall protect him from all loss and cost in securing the cancellation of his said lease.

(b)    Changes in place of residence subsequent to the initial change caused by the acquisition or merger which grow out of the normal exercise of seniority in accordance with working agreements are not comprehended within the provisions of this section.

(c)     No claim from loss shall be paid under the provisions of this section which is not presented within 3 years after the effective date of the acquisition or merger.

(d)     Should a controversy arise in respect to the value of the home, the loss sustained in its sale, the loss under contract for purchase, loss and cost in securing termination of lease; or any other question in connection with these matters, it shall be decided through joint conference between the employee or his representative and the carrier, and in the event they are unable to agree, the dispute may be referred by either party to a board of three competent real estate appraisers, selected in the following manner: One to be selected by the employee or his representative and one by the carrier, respectively; these two shall endeavor by agreement within 10 days after their appointment to select the third appraiser or to select some person authorized to name the third appraiser; and in the event of failure to agree, then the Chairman of the National Mediation Board shall be requested to appoint the third appraiser. A decision of a majority of the appraisers shall be required, and said decision shall be final and conclusive. The salary and expenses of the third or neutral appraiser, including the expenses of the appraisal board, shall be borne equally by the parties to the proceedings. All other expenses shall be paid by the party incurring them, including the salary of the appraiser selected by such party.

Section 10.    If either carrier, on or after _____, shall rearrange or adjust its forces in anticipation of the acquisition or merger, with the purpose or effect of depriving an employee of benefits to which he should be entitled under these provisions as an employee immediately affected by the acquisition or merger, these provisions shall apply to such an employee as of the date when he is so affected.

Section 11. [CARRIER] shall jointly or severally give at least 45 days' written notice containing a full and adequate statement of the proposed changes to be affected by the acquisition or merger, including an estimate of the number of employees of each class, craft, or field of endeavor affected by the intended changes. Such notice shall be posted on bulletin boards or other conspicuous places convenient to the employees of said carriers, and a copy of the notice shall be sent by registered mail to all authorized representatives of any of the employees of both carriers.

If requested in writing by an employee or employees of either carrier or the authorized representative of such employee or employees, the date and place of a meeting between said employees or their representatives and the representatives of the carriers to settle problems of the rearrangement of such employee arising out of and because of the acquisition or merger shall be agreed upon within 10 days after such request is received by the carrier. The meeting shall commence within 30 days from the date the request is received by the carrier.

In the event of a failure to agree upon a settlement of a problem or of problems presented at the meeting, the unsettled problems may be submitted by either party for adjustment in accordance with section 13.

Section 12. No employee of either carrier shall, as a condition of eligibility for the protection afforded by the terms of this order be required to accept employment with the surviving carrier that is not within the class, craft, or field of endeavor in which he was employed by either carrier on the date of the attached order.

Section 13(a). In the event that any dispute or controversy (except as to matters arising under section 9) arises with respect to the protections provided herein which cannot be settled by the parties within 20 days after the controversy arises, it may be referred by any party to an arbitrator selected from a panel of seven names furnished by the National Mediation Board for consideration and determination. The parties shall select the arbitrator from such panel by alternatively striking names until only one remains, and he shall serve as arbitrator. Expedited hearings and decisions will be expected, and a decision shall be rendered within 90 days after the controversy arises, unless an extension of time is mutually agreeable to all parties. The salary and expenses of the arbitrator shall be borne equally by the carrier and (i) the organization or organizations representing the employee or employees or (ii) if unrepresented, the employee or employees or group or groups of employees. The decision of the arbitrator shall be final and binding on the parties.

(b)     The above condition shall not apply if the parties by mutual agreement determine that an alternative method for dispute settlement or an alternative procedure for selection of arbitrator is appropriate in their particular dispute. No party shall be excused from complying with the above condition by reason of having suggested an alternative method or procedure unless and until the alternative method or procedure shall have been agreed to by all the parties.